Curtis Ray JOHNICAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0305–CR–196.

Court of Appeals of Indiana.

March 3, 2004.

Jon Aarstad, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Curtis R. Johnican appeals his sentence. In particular, Johnican argues his sentence is erroneous because: (1) the State did not file his habitual offender enhancement within ten days of his omnibus date or show good cause for failing to make a timely filing; (2) the trial court improperly attached his habitual offender enhancement to his conviction for possession of cocaine, which is proscribed by Indiana Code § 35–50–2–8(b); and (3) his aggregate sentence exceeds the allowable sentence pursuant to Indiana Code § 35–50–1–2(c) because his possession of cocaine was not part of the same criminal episode as his other offenses. We find that the trial court did not err by allowing the State to belatedly file the habitual offender count or by determining that the offenses were part of a single criminal episode. Because we find that the trial court improperly attached the habitual offender count to a conviction ineligible for enhancement, however, we remand for resentencing consistent with this opinion.

### Facts and Procedural History

During the early morning hours of August 31, 2002, Officers Dan Hoehn and Kevin Day of the Evansville Police Department were on-duty in their marked patrol car when they observed Johnican walking across the street. Because the officers were aware that there was an outstanding warrant for Johnican, Officer Hoehn ordered Johnican to stop so that the officers could speak with him. Johnican ignored Officer Hoehn's order and continued walking. Officer Hoehn then exited his patrol car and yelled to Johnican a second time to stop so that the officers could speak with him. Johnican took a few more steps, stopped, pulled a gun from his shorts, and pointed it at Officer Hoehn. Johnican pulled the trigger, but the gun did not fire. As Officer Hoehn attempted to seek cover, Johnican aimed the gun at him a second time and pulled the trigger. Again, the gun did not fire. To alert Officer Day, Officer Hoehn yelled, "Gun, Gun." Tr. p. 143. In response, Johnican aimed the gun at Officer Day and pulled the trigger. Yet again, the gun did not fire. Johnican looked down at the gun and then ran from the officers. The officers called for backup as they pursued Johnican on foot.

Johnican turned and pointed his gun at the officers again as he attempted to flee from them. In response, Officer Hoehn fired a shot at Johnican, which missed. As Johnican attempted to return fire, Officer

Hoehn again attempted to fire a shot at Johnican. Officer Hoehn's gun, however, malfunctioned. As Officer Day came upon Officer Hoehn, he observed Johnican aiming his weapon at Officer Hoehn and fired a single bullet into Johnican's upper chest. Johnican then dropped his gun and continued to flee. A bystander tackled Johnican but released him after Johnican informed the bystander that he was "carrying dope." Tr. p. 298. A few moments later, the officers apprehended Johnican.

The officers provided first aid to Johnican until emergency medical personnel arrived and transported Johnican to the hospital. As hospital staff removed Johnican's clothing, the officer who accompanied Johnican to the hospital observed a small plastic baggy containing an off-white, rock-like substance fall out of Johnican's shorts. The substance was subjected to analysis and determined to be 0.85 grams of crack cocaine. When detectives questioned Johnican about the incident with Officers Hoehn and Day, he told them that the reason he ran from the police was because he had some cocaine in his possession and did not want to go back to jail. Johnican also explained that he pointed the gun at the officers because he had a terrible cocaine addiction problem and hoped that the officers would shoot him.

On September 5, 2002, the State charged Johnican with seven counts: two Class A felony counts of Attempted Murder of a police officer;[1] one Class B felony count of Unlawful Possession of Firearm by Serious Violent Felon;[2] one Class B felony count of Possession of Cocaine;[3] two Class D felony counts of Pointing Firearm at Another Person;[4] and one Class D felony count of Resisting Law Enforcement.[5] Johnican's initial hearing was held on September 6, 2002, at which time the trial court set an omnibus date of November 8, 2002.[6]

On February 25, 2003, the State moved the trial court to permit it to amend the charging information by adding a habitual offender count. The State explained to the trial court that it did not file the habitual offender account sooner because the State anticipated entering into a plea agreement with Johnican and that as soon as the State realized that Johnican would not agree to plea, it filed its motion to amend the information to add the habitual offender count. Additionally, the State submitted a copy of its September 5, 2002, written offer to Johnican. The offer provided that the State would not file a habitual offender count based on Johnican's previous felony convictions for carrying a handgun without a permit by a felon and forgery. After the trial court allowed the amendment, Johnican moved for a continuance, which the trial court granted. The trial began on March 31, 2003. Following the four-day trial, the jury found Johnican guilty of possession of cocaine, one count of pointing a loaded firearm at another person, and one count of resisting law enforcement. Subsequently, the jury determined that Johnican was a habitual offender.

---

1. Ind.Code §§ 35–41–5–1(a); 35–42–1–1.

2. Ind.Code § 35–47–4–5(c). Upon Johnican's motion, the unlawful possession of a firearm by a serious violent felon count was severed from the other counts prior to trial.

3. Ind.Code § 35–48–4–6(b)(2)(B)(i).

4. Ind.Code § 35–47–4–3(b).

5. Ind.Code § 35–44–3–3(a)(1), (b)(1)(B).

6. Subsequently, the trial court reset the omnibus date to January 3, 2003, and then to March 7, 2003.

Based on these convictions and the determination that Johnican was a habitual offender, the trial court imposed an aggregate sentence of fifty-six years. In particular, the trial court imposed the maximum sentence of twenty years for his possession of cocaine conviction, which it enhanced by thirty years based on Johnican's adjudication as a habitual offender; the maximum sentence of three years for his Class D felony pointing a loaded firearm conviction; and the maximum sentence of three years for his Class D felony resisting law enforcement conviction, which the trial court ordered to be served consecutively. Johnican now appeals.

### Discussion and Decision

 Johnican appeals his sentence, claiming that his fifty-six year sentence violates both the general habitual offender statute, Indiana Code § 35–50–2–8(b), and the consecutive sentencing statute, Indiana Code § 35–50–1–2(c). Further, Johnican claims that the trial court erred by allowing the State to belatedly file its habitual offender count. At the outset we note that sentencing decisions are entrusted to the sound discretion of the trial court and will be reversed only upon a showing of manifest abuse of that discretion. *Beck v. State*, 790 N.E.2d 520, 522 (Ind.Ct.App. 2003). Broad discretion notwithstanding, a trial judge is required to act within statutorily prescribed limits when making sentencing determinations. *See Jones v. State*, 789 N.E.2d 1008, 1011 (Ind.Ct.App. 2003), *reh'g denied, trans. denied.* Thus, although sentencing is generally left to the discretion of trial courts, the Court of Appeals is duty bound to correct sentences that violate the trial court's statutory authority. *Monyhan v. State*, 780 N.E.2d 1187, 1189 (Ind.Ct.App.2003).

## I. Habitual Offender Enhancement

### A. Amending Information to Include Habitual Offender Count

 Johnican argues that the trial court erred by allowing the State to belatedly amend the charging information to add a habitual offender count without showing good cause for the delay. Indiana Code § 35–34–1–5(e) permits an amendment of an indictment or information to include a habitual offender enhancement within ten days of the omnibus date. Once the omnibus date is set, it remains the omnibus date for the case until final disposition, unless specific statutory factors are met.[7] Ind.Code § 35–36–8–1(d); *see also Sappenfield v. State*, 462 N.E.2d 241, 243–44 (Ind.Ct.App.1984) (original omnibus date remains the same even if the omnibus hearing is continued). Upon a showing of good cause, however, the trial court may permit the filing of a habitual offender charge at any time before the commencement of the trial. Ind.Code § 35–34–1–5(e).

Here, the trial court set the omnibus date for November 8, 2002. The State, however, did not file its habitual offender count until February 25, 2003 well beyond the ten-day period established for such filings by Indiana Code § 35–34–1–5 but before the trial commenced on March 31,

---

7. In particular, Indiana Code § 35–36–8–1 provides the following exceptions to the general rule that the omnibus date remains the same once set:
 (1) the defendant requests a trial within time limits established by the Indiana rules of criminal procedure for early trial motions;
 (2) subsequent counsel enters an appearance after the omnibus date and previous counsel withdrew or was removed due to: (A) a conflict of interest; (B) a manifest necessity required that counsel withdraw from the case;
 (3) the state has not complied with an order to compel discovery; or
 (4) the prosecuting attorney and the defendant agree to continue the omnibus date.

2003. The State explained the reason it did not amend the charging information within the statutorily prescribed period was because, as part of the plea negotiations with Johnican, the State had promised not to file a habitual offender count based on Johnican's previous felony convictions. As soon as the State realized that Johnican was not going to agree to plea, the State filed its amendment, which sought to add a habitual offender count based on two of Johnican's previous, unrelated felony convictions. Johnican objected to the untimely filing, but following a hearing on the matter, the trial court determined the delay in amending the information was justified by good cause. Specifically, the trial court found:

> In any event, the State has shown "good cause" for the late filing. Prior to the original omnibus date, the State tendered a plea offer to ... Johnican in which the State offered to forego the filing of the habitual offender enhancement provided he plead guilty to Counts 1 through 4 of the Information. The plea negotiations continued up to or very shortly prior to the filing of the enhancement. Johnican either refused to accept the plea bargain offer or rejected the offer by inaction. Johnican may not now be heard to successfully argue that he was surprised by the late filing of the enhancement. Nor should the Defendant be permitted to virtually weaponize the State's previous offer of leniency, by claiming that the duration of the State's period of forbearance was essentially too lengthy.

Appellant's Br. p. 48. We agree with this determination. Consequently, we conclude that the trial court did not err by permitting the State to belatedly file a habitual offender count against Johnican.

### B. Attachment of Habitual Offender Enhancement

Johnican also argues, and the State concedes, that the trial court violated Indiana Code § 35–50–2–8(b) by attaching his habitual offender enhancement to a count that was not eligible for enhancement. We agree.

■ Indiana Code § 35–50–2–8(b) proscribes the State from seeking to have a person sentenced as a habitual offender based on certain felony offenses. Specifically, Indiana Code § 35–50–2–8(b)(3) provides:

> (b) The state may not seek to have a person sentenced as a habitual offender for a felony under this section if: ...
>
> (3) all of the following apply:
>
> (A) The offense is an offense under IC 16–42–19 or IC 35–48–4.
>
> (B) The offense is not listed in section 2(b)(4) of this chapter.[8]
>
> (C) The total number of unrelated convictions that the person has for:

---

**8.** Although Indiana Code § 35–50–2–2(b)(4) delineates several offenses, only two are relevant to an inquiry under Indiana Code § 35–50–2–8(b)(3):

(1) dealing in cocaine, a narcotic drug, or methamphetamine if the court finds the person possessed a firearm at the time of the offense, or the person delivered or intended to deliver to a person under eighteen years of age at least three years junior to the person and was on a school bus or within one thousand feet of school property, a public park, a family housing complex, or a youth program center; and

(2) dealing in a schedule I, II, or III controlled substance if the court finds the person possessed a firearm at the time of the offense, or the person delivered or intended to deliver to a person under eighteen years of age at least three years junior to the person and was on a school bus or within one thousand feet of school property, a public park, a family housing complex, or a youth program center.

Ind.Code § 35–50–2–2(b)(4)(O), (P).

(i) dealing in or selling a legend drug under IC 16–42–19 27[;]

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3[) ]; and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4);

does not exceed one (1).

In other words, a trial court is prohibited from enhancing a drug offense under the general habitual offender statute where the underlying offense is not delineated in Indiana Code § 35–50–2–2(b)(4) and the defendant has not accrued two or more unrelated dealing convictions.

The trial court attached Johnican's habitual offender enhancement to his conviction for possession of cocaine. However, this was not permissible because (A) possession of cocaine is an offense under Indiana Code § 35–48–4–6; (B) possession of cocaine is not an offense listed under Indiana Code § 35–50–2–2(b)(4); and (C) Johnican did not have any dealing convictions, let alone more than one. *See* I.C. § 35–50–2–8(b)(3). Given the confusing manner in which Indiana Code § 35–50–2–8(b)(3) is drafted, it is understandable how the trial court could have attached the habitual to an offense that was not eligible for enhancement. Nevertheless, the enhancement contravenes the statute and cannot stand. Consequently, we remand this cause to the trial court so that it may

properly attach the habitual offender enhancement to either of Johnican's Class D felony convictions.[9]

## II. Imposition of Consecutive Sentences

■ Additionally, Johnican claims that the trial court erred in ordering his sentences to be served consecutively because by doing so the trial court exceeded the maximum sentence allowable under the consecutive sentencing statute, Indiana Code § 35–50–1–2. In pertinent part, Indiana Code § 35–50–1–2 provides:

[T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively.... However, ... the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an *episode of criminal conduct* shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind.Code § 35–50–1–2(c) (emphasis supplied).

The jury convicted Johnican of one Class B felony and two Class D felonies. Johnican contends that the crimes of which he was convicted did not arise out of a single "episode of criminal conduct." In particular, Johnican alleges that his Class B felony possession of cocaine offense represented one episode of criminal conduct, while his Class D felony offenses of resisting law enforcement and pointing a firearm represented a separate episode of criminal conduct. Therefore, Johnican's

9. For purposes of guidance, we summarily note that Indiana Code § 35–50–2–8(h) requires the sentence for Johnican's adjudication as a habitual offender to be at least one and one-half years but no more than four and one-half years. *See* I.C. § 35–50–2–8(h) (mandating that the trial court shall sentence a person found to be a habitual offender to an

additional fixed term that is neither less than the presumptive sentence for the underlying offense nor more than three times the presumptive sentence for the underlying offense); Ind.Code § 35–50–2–7 (specifying that the presumptive sentence for a Class D felony is one and one-half years).

argument continues, because both of his Class D felony convictions arose from the same episode of criminal conduct but neither was a crime of violence,[10] the maximum sentence the trial court is statutorily authorized to impose for his Class B felony conviction and his two Class D felony convictions, excluding any sentence for the habitual offender determination, is twenty-four years.[11]

Johnican's argument turns on whether all three of his convictions were part of a single episode of criminal conduct. An "episode of criminal conduct" is defined by statute as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–2(b). We have previously recognized that an episode means an occurrence or connected series of occurrences and developments that may be viewed as distinctive and apart although part of a larger or more comprehensive series. *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct.App. 1995). We further stated that the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to details of the other charge. *Id.*

Johnican directs our attention to *Ratliff v. State,* 741 N.E.2d 424 (Ind.Ct.App.2000), *trans. denied.* In *Ratliff,* a concerned citizen called the sheriff's department to report that a drunk driver, later determined to be Scottie Ratliff, had just driven through his yard two times. The caller gave a detailed description of the car and its license plate number. A deputy responded to the call and observed a vehicle matching the caller's description driving in an erratic manner. When the deputy attempted to effectuate a stop of the vehicle by activating his lights and siren, Ratliff refused to stop and led the deputy on a chase. Ratliff eventually abandoned the vehicle in a cornfield and took off on foot. The deputy found Ratliff lying facedown in the cornfield with plastic bags containing marijuana concealed beneath his body. Based on these facts, another panel of this court held that the defendant's operating while intoxicated and resisting law enforcement convictions were part of the same criminal episode but that the defendant's possession of marijuana conviction was wholly separate, related only by the fact that the crime was discovered in the course of pursuing a fleeing drunk driver. *Id.* at 434. We would not have reached the same conclusion and find Judge Mathias' dissent to be the more appropriate way to resolve the issue.

In his dissent Judge Mathias noted that Ratliff's possession of marijuana was directly and inextricably connected to the other offenses, as it occurred at the same time and place as the other offenses and would have never been discovered had Ratliff not been driving while intoxicated. *Id.* at 436. Additionally, Judge Mathias cautioned that under the majority's rationale, "every possession offense ... will never be part of any criminal episode." *Id.* Judge Mathias continued by recogniz-

---

10. *See* I.C. § 35–50–1–2(a) (delineating fourteen offenses that are considered crimes of violence for purposes of applying the consecutive sentencing statute).

11. Johnican arrives at twenty-four years by adding his twenty-year sentence for his Class B felony conviction to an aggregate sentence of four years for his two Class D felony convictions. *See* I.C. § 35–50–1–2 (limiting the total of consecutive terms of imprisonment for felony convictions arising out of the same episode of criminal conduct—but that are not "crimes of violence"—to the presumptive sentence for a felony that is one class higher than the most serious felony for which the defendant has been convicted); Ind.Code § 35–50–2–6 (specifying that the presumptive sentence for a Class C felony is four years).

ing that "such a result contravenes both the language and intent of [Indiana Code § 35–50–1–2]." *Id.*

We agree with Judge Mathias. Hence, we hold that where, as in this case, a defendant possesses contraband on his person as he simultaneously commits other criminal offenses, the offenses should be deemed part of a single episode of criminal conduct. Based on the foregoing, we conclude that the possession of cocaine offense was part of the same episode of criminal conduct as his resisting law enforcement and pointing a firearm offenses. Because we find that Johnican's offenses constituted a single episode of criminal conduct; that Indiana Code § 35–50–1–2(b) permits the trial court to impose consecutive sentences totaling thirty years;[12] and that the trial court only imposed consecutive sentences for the three felonies totaling twenty-six years, we hold that the trial court did not violate Indiana Code § 35–50–1–2.

### III. Conclusion

In sum, we find no error in the trial court allowing the State to belatedly file its habitual offender count or ordering the sentences for Johnican's three convictions to be served consecutively. However, because Indiana Code § 35–50–2–8 restricts a trial court from attaching a habitual offender enhancement to Johnican's conviction for possession of cocaine, we remand this case to the trial court for re-sentencing.

Remanded.

SHARPNACK, J., and MATHIAS, J., concur.

12. The most serious felony for which Johnican had been convicted was a Class B felony. Thus, in determining the maximum allowable sentence under Indiana Code § 35–50–1–2(c) we look to the presumptive sentence for a Class A felony, which is thirty years. *See* Ind.Code § 35–50–2–4.